# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Georgia

| | |
|---|---|
| BuildingReports.com, Inc. ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 1:17-cv-03140-SCJ |
| ) | |
| Honeywell International, Inc. ) | |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Performance Systems Integration, LLC c/o Corporation Service Company (Registered Agent)
1127 Broadway Street NE, Suite 310, Salem, OR 97301

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Exhibit A (attached)

| Place: Huseby Inc. c/o Beovich Walter & Friend<br>1001 SW 5th Avenue, Suite 1200<br>Portland, OR 97204 | Date and Time:<br>01/15/2018 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/12/2017

*CLERK OF COURT*

OR

_____          /s/ Douglas R. Kertscher
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* BuildingReports.com, Inc. , who issues or requests this subpoena, are:

Douglas R. Kertscher; 3350 Riverwood Pkwy SE, Suite 800, Atlanta, GA 30339; drk@hkw-law.com; (770) 953-0995

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Case 1:17-cv-03140-SDG   Document 38-1   Filed 12/12/17   Page 3 of 16

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:17-cv-03140-SCJ

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

# **EXHIBIT A**

**I.     DEFINITIONS**

1. As used herein, the terms "you", "your" and "PSI" means Performance Systems Integration, LLC including all of its various divisions, departments, subsidiaries, parents, affiliates, predecessors, present or former officers, directors, managing agents, employees, and all other persons acting on or purporting to act on its behalf.

2. As used herein, "BRC" means the named plaintiff, BuildingReports.com, Inc., including all of its various divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, managing agents, employees, and all other persons acting on or purporting to act on its behalf.

3. As used herein, "Honeywell" means the named defendant Honeywell International, Inc., including all of its various divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, managing agents, employees, and all other persons acting on or purporting to act on its behalf (including but not limited to: NOTIFIER, a manufacturer of engineer fire alarm systems; Honeywell Fire Safety; Honeywell Life Safety; Honeywell Security and Fire; Gamewell-FCI; and Silent Knight).

4. As used herein, the "Terms and Conditions" refer to the Building Reports Terms and Conditions Agreement PSI executed on or around April 28, 2014, a copy of which is attached hereto as "Exhibit B."

5. As used herein, the "Relevant Period" is January 1, 2012 – January 1, 2016.

## II. DOCUMENTS REQUESTED TO BE PRODUCED

**REQUEST NO. 1:** All correspondence, including emails, between you and Honeywell relating to Honeywell's development and/or promotion of safety inspection report solutions (including but not limited to, "Software as a Service," acceptance testing services, inspection management software solutions, web-based inspection systems, and eVance Services) during the Relevant Period.

**REQUEST NO. 2:** All correspondence, including emails, between you and Honeywell relating to Honeywell's advertisement of or efforts to sell its eVance Services to you during the Relevant Period.

**REQUEST NO. 3:** All correspondence, including emails, (internally among your employees or externally with third parties) relating to the features and functions of Honeywell's eVance Services during the Relevant Period.

**REQUEST NO. 4:** All correspondence, including emails, between you and Honeywell relating to BRC's online and mobile inspection software and tools during the Relevant Period.

**REQUEST NO. 5:** All documents and correspondence, including emails, comparing, contrasting, or otherwise discussing both Honeywell's eVance Services and the services or software provided by BRC during the Relevant Period.

**REQUEST NO. 6:** All documents and correspondence, including emails, with any third party, including but not limited to Honeywell, relating to, discussing, and/or conveying BRC's technical or non-technical data; formulas; patterns; compilations; programs; devices; methods; techniques; drawings; processes; financial data; financial plans; product plans; lists of actual or potential customers or suppliers; user manuals; copyrights; trademarks; service marks; patents; patent applications; inventions; information or theories that are protectable or registrable under any of the copyright, patent, trade secret, confidentiality or other similar laws; proprietary software; confidential business information; the input or output of the BuildingReports Program; or any other information or documents constituting Trade Secrets or Confidential Information as defined in the Terms and Conditions during the Relevant Period.

# EXHIBIT B



# Terms and Conditions

FOR AND IN CONSIDERATION OF THE MUTUAL COVENANTS AND AGREEMENTS CONTAINED HEREIN, AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEGED, BUILDINGREPORTS AND MEMBER HEREBY AGREE AS FOLLOWS:

1) **Definitions.**  When used herein, the following terms shall have the respective meanings set forth below:

   a) "Affiliate," means, with respect to any Person, any other Person controlling, controlled by or under common control with such Person.
   b) "Authorized Services" has the meaning set forth below:
      i) Creation of Building Accounts.
      ii) Creation of User Accounts.
      iii) Inspection of Building Accounts.
      iv) Creation and distribution of reports.
      v) Access to complete backups of inspection information.
      vi) Creation of Building User Accounts for viewing inspections and forms.
      vii) Access to more customized inspection reports
      viii) Access to related industry reports on aggregate inspections: efficiency, inspection totals, statistical reports, etc.
   c) "Authorized Users" means
      i) Member's authorized and qualified personnel who need access to the BuildingReports Web Site (or any databases contained therein or accessible through such web site) in connection with the Services.
      ii) End Users, all of whom must have received user accounts and passwords in accordance with BuildingReports' rules and procedures.
   d) "BuildingReports Program" has the meaning set forth in Section 3.
   e) "BuildingReports Web Site" means the web site owned and hosted by BuildingReports at the URL www.buildingreports.com and any designated successor or related web sites owned and operated by BuildingReports for provision of the Services.
   f) "Confidential Information" means, with respect to a party, all valuable, proprietary and confidential information belonging to or pertaining to that party that does not constitute a "Trade Secret" (as defined in Section 1(p)) and that is not generally known by or available to the party's competitors but is generally known only to that party and those of its employees, independent contractors, clients or agents to whom such information must be confided for internal business purposes.  The "Confidential Information" of a party (the "First Party") shall not include information that
      i) has become generally known by or available to the public or the First Party's competitors through no wrongful act or omission of the other party (the "Second Party");
      ii) has been rightfully and lawfully furnished to the Second Party by a party other than the First Party on a non-confidential basis; or
      iii) has been developed independently by the Second Party without use of the First Party's Confidential Information.
   g) "Documentation" means user manuals, if any, provided to Member or Authorized Users by BuildingReports.
   h) "Effective Date" has the meaning set forth on the signature page.
   i) "End Users" means Member's authorized and qualified personnel who receive access to and/or the right to use the Proprietary Software in accordance with the provisions of Section 4(a).
   j) "End User License Agreement" means the End User License Agreement for the Proprietary Software, a copy of which may be downloaded from http://www.buildingreports.com in the BuildingReports Web Site.
   k) "Intellectual Property" means
      i) copyrights, trademarks, service marks and any other rights to any form or medium of expression;
      ii) trade secrets, privacy rights and any other protection for confidential information or ideas;
      iii) patents and patent applications;
      iv) inventions and any other items, information or theories which are protectable or registrable under any of the copyright, patent, trade secret, confidentiality or other similar laws; and
      v) any other similar rights or interests recognized by applicable law.
   l) "Property Owners" means building or property owners and/or managers for whom Member utilizes the BuildingReports Program to provide Authorized Services.
   m) "Proprietary Software" means BuildingReports' proprietary software system which allows End Users to electronically perform data collection and record the results, which software system is more fully described  below:

     i)    Software for the PalmOS and PC which allows the exchange of data between the handheld device and the BuildingReports web server.
     ii)   WebConnector™ and BRConnect™ are standard Windows applications that synchronize the inspection data to the BuildingReports Web Site.
- n) "Services" means the data management, hosting, reporting and other services to be provided by BuildingReports:
The BuildingReports Web Site serves as the central repository for data collected using hand-held scanning devices and allows the automatic generation of a variety of inspection reports associated with this data. The following is a list of the Services provided by the BuildingReports Web Site:
  - i) Integration of data sent by the appropriate application.
  - ii) Generation of Inspection Reports
  - iii) Creation of new building accounts
  - iv) Creation of new user accounts with specified privileges.
  - v) Download of the latest inspection software for the hand-held scanning device and the WebConnector PC application.
  - vi) Online access to various forms of documentation, such as help files, FAQ lists, and legal documentation.
- o) "Territory" shall mean areas serviced or covered from the location of the organization listed on the web site.
- p) "Trade Secrets" means information (including, but not limited to, confidential business information, technical or non-technical data, formulas, patterns, compilations, programs, devices, methods, techniques, drawings, processes, financial data, financial plans, product plans, lists of actual or potential customers or suppliers, Member's Property Data that specifically identifies Member, a Property Owner or a building, and the terms of this Agreement and any associated agreements between the parties) that:
  - i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
  - ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

2) **Provision of Services.**

   a) Member hereby engages BuildingReports, and BuildingReports hereby agrees to use its commercially reasonable efforts to provide the Services substantially in accordance with the terms and conditions of this Agreement.  Member hereby acknowledges and agrees that BuildingReports' performance of the Services is dependent and conditioned upon Member's full performance of its duties, obligations and responsibilities set forth in this Agreement.
   b) Member will select and advise BuildingReports of the name, business address, telephone number and e-mail address of its authorized representative for coordination of the Services (the "Manager Account User").  The Manager Account User will have authority to make decisions on behalf of Member with respect to this Agreement and the provision of the Services.  In no event shall Member be without a Manager Account User during the term of this Agreement.
   c) Notwithstanding anything to the contrary herein, the parties hereby acknowledge and agree that Member shall have no right to control the manner, means or method by which BuildingReports performs the Services.  Rather, Member shall be entitled only to direct BuildingReports with respect to the elements of Services to be performed by BuildingReports and to review and assess the performance of such Services by BuildingReports for the limited purpose of assuring that such Services have been performed substantially in accordance with this Agreement.
   d) BuildingReports will use commercially reasonable efforts to ensure that our Service Level (as defined in the attached Service Level Commitment document) achieves a "Composite Score" of 99.83 or higher each month.  This excludes downtime and interruptions associated with or caused by a force majeure event under Section 14, an act or omission of Member or a third party or scheduled maintenance outages.  Member will promptly report to BuildingReports an inability to access Services.  Based on Member's reports verified by BuildingReports, if the Service Level composite score is less than 99.83 of the aggregate time in a particular month, excluding unavailability associated with or caused by a force majeure event under Section 14, an act or omission of Member or a third party or scheduled maintenance outages, then Building Reports will provide a credit to Member in the amount of the User Fees for such month.

3) **Registration of Authorized Users.**

   a) Member further agrees to cause each Authorized User to register with BuildingReports by obtaining a valid user account and password with BuildingReports by following the procedures set forth at http://www.buildingreports.com on the BuildingReports Web Site.
   b) Member shall be responsible for all use of the Services, the BuildingReports Web Site, the Documentation and/or the Proprietary Software (collectively, the "BuildingReports Program") by Member's Authorized Users and any other Person who gains access to the BuildingReports Program through Member or Member's Authorized Users.

4) **License to use BuildingReports Program.**

   a) Subject to the terms and conditions set forth herein, BuildingReports grants to Member a non-exclusive, non-transferable, limited license to
      - i) use the BuildingReports Program within the Territory for the sole purpose of providing Authorized Services to Property Owners located in the Territory, and
      - ii) to distribute copies of the Proprietary Software and applicable Documentation to Member's Authorized Users located in the Territory for such purpose.

    Member acknowledges and agrees that the rights and licenses granted to Member herein are non-exclusive within the Territory and that BuildingReports may grant the same or similar rights and licenses to other Persons, including BuildingReports and its Affiliates (both inside and outside the Territory).  Without limiting the generality of the foregoing, any use of the Proprietary Software shall be in accordance with the End User License Agreement, and any access to or use of the BuildingReports Web Site shall be in accordance with BuildingReports' Web Site Terms and Conditions (which can be found at http://www.buildingreports.com on the BuildingReports Web Site).

  b)  Member agrees that it will utilize the BuildingReports Program for the sole purpose of providing Authorized Services to authorized users.  Member shall be solely responsible for ensuring that Member's receipt of the Services and its Authorized Users' use of the BuildingReports Program comply with all laws, rules, regulations and ordinances applicable to Member, and Member's Authorized Users who gain access to the BuildingReports Program by or through Member.

  c)  This Agreement does not grant Member any rights in or to any trademark, service mark, or logo of BuildingReports or its Affiliates.  Any such rights must be set forth in a separate agreement executed by the parties.  Member hereby grants to BuildingReports the right to disclose that Member is a participant in the BuildingReports Program.

  d)  Member acknowledges that it will not gain any right or license by estoppel or otherwise with respect to the BuildingReports Program or any portion thereof, other than the rights and license expressly granted in this Agreement.

  e)  Member shall not (and shall not attempt to), directly or indirectly, modify, prepare derivative works of, reverse engineer, de-compile or disassemble the Proprietary Software or any other component of the BuildingReports Program.  Member shall not (and shall not attempt to) sell, lease, license, sublicense, give, share, communicate, distribute, or otherwise transfer the Proprietary Software or Documentation to any person or entity other than as expressly permitted in this Agreement.

  f)  Member shall actively demonstrate, promote and solicit orders for Authorized Services to Property Owners in the Territory; provided, however, that Member shall not make any representations or warranties regarding the BuildingReports Program (or any portion thereof) which are not expressly set forth in the Documentation, unless expressly authorized in writing by BuildingReports in each instance.

  g)  BuildingReports shall provide Member with the maintenance and support services set forth below:
   i) BuildingReports will respond to email support requests within four (4) business hours of receipt.
   ii) Extra Phone support available for a per call fee during normal business hours (ET*).
   iii) Other support services may be provided by BuildingReports to Member at BuildingReports' then current prices.

**5) Ownership, Protection and Security.**

  a)  BuildingReports and Member acknowledge and agree that BuildingReports owns (as between BuildingReports and Member) and will retain all ownership in the Intellectual Property and all other property rights and interests associated with the BuildingReports Program (including the Proprietary Software and Documentation), subject to the rights and licenses specifically granted to Member in this Agreement and to Authorized Users in the End User License Agreement.  To the extent Member has or later obtains any Intellectual Property or other property rights or interests in the BuildingReports Program by operation of law or otherwise, Member hereby disclaims such rights or interests and agrees to assign and transfer such entire interest exclusively to BuildingReports.

  b)  All copies or down-loads of the Proprietary Software and Documentation provided by BuildingReports to Member, all copies or down-loads of the Proprietary Software and Documentation distributed by Member to Authorized Users, and all backup or archival copies thereof made by Member or Authorized Users, are and will remain (as between BuildingReports and Member) the exclusive property of BuildingReports and may not be disclosed, distributed, or furnished by Member or Authorized Users to any other Person, except as expressly authorized by this Agreement or the applicable End User License Agreement.  In furtherance of the foregoing:
   i) Except with BuildingReports' express, prior written permission, Member shall not provide or otherwise make the Proprietary Software or Documentation available to any Person in any form other than to Member's Authorized Users who execute the End User License Agreement;
   ii) Member shall reproduce and include on all copies or downloads of the Proprietary Software and Documentation made by Member all copyright or trademark notices and other notices of proprietary rights as directed by BuildingReports;
   iii) Member shall, before disposing of any hardware, equipment or media, use commercially reasonable efforts to erase or destroy all portions of the Proprietary Software and Documentation contained thereon;
   iv) Member shall not use the Proprietary Software or Documentation (or the BuildingReports Program) to create or aid in the creation of a software package for sale or license to others, or furnish information concerning, or copies of, the input or output of the BuildingReports Program to any Person who, to Member's knowledge, is designing or creating a software package or program competitive to the BuildingReports Program; and
   v) Member shall take all reasonable actions required in writing by BuildingReports with respect to any Person permitted access to the BuildingReports Program as will reasonably enable Member to satisfy its obligations under this Agreement.

**6) Use of Member and Property Owner Data.**

  a)  Member hereby represents and warrants to BuildingReports that it has all governmental, third Person, corporate and other consents, permits, licenses and approvals necessary for it to enter into this Agreement and perform its obligations hereunder, and that this Agreement constitutes the valid and binding agreement of Member, enforceable against Member in accordance with its terms.  BuildingReports hereby agrees that any use of building, equipment or Property Owner data provided to BuildingReports hereunder or collected by BuildingReports in connection with the Services (collectively, "Property Data") will be in accordance with the BuildingReports Acceptable Use and Privacy Policy.

    b)    Member hereby grants BuildingReports the non-exclusive, worldwide right to use the Property Data as provided herein and in the attached BuildingReports' Acceptable Use and Privacy Policy.  Notwithstanding anything to the contrary set forth herein or contained on the BuildingReports' Web Site, BuildingReports reserves the right to disclose Property Data to the Property Owner for whom Member collects such Property Data as otherwise required by applicable law.

7)  **Member Responsibilities.**

    a)    Member shall ensure that Member's hardware, platforms, software and other systems that will communicate with or be connected to the BuildingReports Program (or any portion thereof) are compatible with the BuildingReports Program, as specified by BuildingReports.  A list of currently compatible hardware and software is set forth below (BuildingReports will provide an updated list of the below hardware and software upon request):
        i)    PalmOS based ScanSeries™ Software and BRInspector™
            (a)    Minimally requires a PalmOS version 3.0 or higher PDA
        ii)    WebConnector™ and BRConnect™
            (a)    Unobstructed Internet Connection.
            (b)    Any PC capable of running Windows 95, or higher.

    b)    Member shall provide, at no cost to BuildingReports, necessary personnel and facilities, all hardware, software, communications equipment, telephone and communication lines, power, telephone service and other utilities as may be necessary or reasonably desirable for Member to receive the Services and utilize the BuildingReports Program.

    c)    Member shall cooperate with BuildingReports in the performance of its Services and shall promptly respond to any requests by BuildingReports for information.  Member shall perform its duties and obligations hereunder in a professional manner in accordance with applicable laws.

8)  **Payments.**

    a)    BuildingReports will invoice Member monthly for all payments owing to BuildingReports hereunder, and Member agrees to pay each such invoice upon receipt.

    b)    Any payment that Member fails to make to BuildingReports as provided in Section 8(a) above will bear interest at a monthly rate of 1.5% or the maximum interest rate permitted under applicable law, whichever is less.  If any amount due BuildingReports remains unpaid by Member beyond 30 days from the date such amount becomes payable as provided in Section 8(a) above, in addition to all other applicable rights and remedies, BuildingReports may elect to terminate this Agreement or immediately suspend any further performance under this Agreement until Member makes all overdue payments (together with interest due).

    c)    Member shall pay all sales, uses, goods, and services, value added and other taxes or duties assessed by local, state, federal or international authorities on the Services or Member's use of the BuildingReports Program.

9)  **Subcontracting.**

    a)    BuildingReports may, in its sole discretion, subcontract some or all of the Services to subcontractors.  BuildingReports shall require the subcontractors to assume toward BuildingReports substantially all of the obligations and responsibilities, which BuildingReports, by this Agreement, assumes toward Member, including, but not limited to, the Acceptable Use and Privacy Policy.

    b)    BuildingReports will be responsible for the management of its subcontractors in their performance of any portion of the Services.  Member may subcontract performance of its obligations only to who agree to be bound by the terms of this Agreement. No such subcontracting shall relieve Member of its obligations hereunder.

10) **Mutual Nondisclosure.**

    a)    Through exercise of each party's rights under this Agreement, each party may be exposed to the other party's Trade Secrets and Confidential Information.  In recognition of the other party's need to protect its legitimate business interests, each party hereby covenants and agrees that (except as provided in Section 6) it shall regard and treat each item of information or data constituting a Trade Secret or Confidential Information of the other party as strictly confidential and wholly owned by the other party and that it will not, without the express prior written consent of the other party, redistribute, market publish, disclose or divulge to any other person, firm or entity, or use or modify for use, directly or indirectly in any way for any person or entity:
        i)    any of the other party's Confidential Information during the term of this Agreement and for a period of three (3) years after the termination of this Agreement; and
        ii)    any of the other party's Trade Secrets at any time during which such information shall constitute a trade secret under applicable law.

    b)    Notwithstanding the foregoing, each party may disclose Confidential Information and Trade Secrets of the other party to those of its officers, directors, employees, agents, independent contractors and advisors who need to know such Confidential Information or Trade Secrets in order to carry out the purposes of this Agreement, except those that are employed by, own or are otherwise affiliated with or participate in business decisions of an entity that competes with Member directly or indirectly (collectively, Member's Competitors).  BuildingReports shall not, under any circumstances except as provided in paragraph 10 (c) herein, disclose Confidential Information or Trade Secrets to persons or entities that BuildingReports knows, or reasonably should know, are Member's Competitors. Each party shall be responsible for ensuring the continued confidentiality of all Trade Secrets and Confidential Information of the other party known by, disclosed or made available to such of its officers, directors,

employees, agents, independent contractors and advisors who need to know such information, including, without limitation, instructing its officers, employees, independent contractors, agents and advisors to maintain the confidentiality of such Confidential Information and Trade Secrets.

c) If a party becomes legally compelled to disclose any Confidential Information or Trade Secrets of the other party (whether by judicial or administrative order, applicable law, rule or regulation, or otherwise), such party will use all reasonable efforts to provide the other party with prior notice thereof so that the other party may seek a protective order or other appropriate remedy to prevent such disclosure; provided, however, that such party will use all reasonable efforts to maintain the confidentiality of any such Confidential Information or Trade Secrets so disclosed.  If such protective order or other remedy is not obtained prior to the time such disclosure is required, such party will only disclose that portion of such Confidential Information and Trade Secrets which it is legally required to disclose.

d) Upon expiration or termination of this Agreement for any reason, each party shall return to the other party all copies, versions or abstracts of written or descriptive materials of any kind that contain or discuss any Confidential Information or Trade Secrets of the other party, and the confidentiality obligations of this Agreement shall continue in full force and effect.

e) Each party expressly understands and agrees that the covenants and agreements set forth in this Section 10 are special, unique, and of an extraordinary character, and in the event of any default, breach or threatened breach hereof by such party, the other party shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, and shall be entitled to such relief as may be available to it pursuant hereto, at law or in equity.  All such rights and remedies shall be cumulative, and none of them shall limit any other rights or remedies of either party.  The provisions of this Section 10 shall survive any expiration or termination of this Agreement.

11) **Term and Termination.**

a) This Agreement shall commence as of the Effective Date and remain in effect until terminated by either party as set forth below.

b) Notwithstanding anything to the contrary in this Agreement, either party, by written notice to the other party, may terminate this Agreement or, in its discretion, suspend its performance without terminating this Agreement upon the occurrence of any of the following:
  i) the other party commits a breach of any of its obligations under this Agreement that materially impairs the first party's Intellectual Property rights; or
  ii) except with respect to actions described in clause i) above, the other party commits a material breach of any of its obligations under this Agreement or the Acceptable Use and Privacy Policy and does not cure such breach within fourteen (14) days of receiving written notice from the non-breaching party specifying such material breach (or, if the breach is such that its cure would take a longer period, commenced to cure and proceeded diligently therewith) or
  iii) the other party becomes insolvent, is adjudged bankrupt, or makes a general assignment for the benefit of its creditors, or becomes a subject of any proceeding commenced under any statute or law for the relief of debtors which is not dismissed within thirty (30) days of commencement or
  iv) a receiver, trustee or liquidator of any of the property or income of the other party is appointed.

c) BuildingReports shall have the right to terminate this Agreement immediately upon delivery of written notice to Member if Member fails to make any payment to BuildingReports within sixty (60) days of the date such payment is due and owing as provided in Section 8.

d) Either party may terminate this Agreement upon ninety (90) days' prior written notice to the other party.

e) A termination of this Agreement shall not relieve the parties of their continuing obligations under those provisions of this Agreement that, by their terms, survive the termination of this Agreement.  Upon termination of this Agreement for any reason, Member shall:
  i) promptly pay to BuildingReports any amounts then due from Member pursuant to the terms of this Agreement,
  ii) return to BuildingReports or destroy all copies of the Proprietary Software and Documentation in Member's possession, and
  iii) cease all use of the BuildingReports Program
  BuildingReports shall:
  iv) provide to Member a copy of Member's Property Data in BuildingReport's possession and
  v) return to Member or destroy all copies of Member's information that are on BuildingReport's servers and that identify customers of Member upon request.

12) **Services Warranty.**

a) BuildingReports hereby represents and warrants that
  i) the Services will be performed in a reasonable manner and
  ii) the Proprietary Software will perform substantially in accordance with applicable Documentation.

b) If Member becomes aware of a breach of the warranties set forth in Section 12(a) above, Member shall immediately notify BuildingReports in writing of such breach, and after receiving such notice, BuildingReports will
  i) promptly investigate and determine the cause of such breach, and
  ii) use its commercially reasonable efforts to either address and correct such breach or arrange a work-around. Member's exclusive remedy for any breach of the warranties made in this Section 12 or elsewhere in this Agreement will be the correction or replacement by BuildingReports of the Services or non-conforming component of the BuildingReports Program, as applicable.

c) Notwithstanding anything to the contrary set forth herein, BuildingReports shall have no obligation to provide the warranty or maintenance or support services described herein if:
   i) the performance failure of the BuildingReports Program is at least partially attributable to Member's materially deviating from applicable operating instructions;
   ii) Member or any other person or entity (other than BuildingReports) has modified the BuildingReports Program or Services in a manner not authorized in writing by BuildingReports; or
   iii) Member is using the BuildingReports Program or Services in conjunction with a central processing unit or any other computer hardware, software, network or peripherals not approved in advance by BuildingReports.
d) OTHER THAN THOSE WARRANTIES EXPRESSLY SET FORTH IN THIS SECTION 12, THE SERVICES AND THE BUILDINGREPORTS PROGRAM ARE BEING PROVIDED "AS IS" AND BUILDINGREPORTS DOES NOT MAKE ANY WARRANTIES TO MEMBER OR ANY OTHER PERSON, EITHER EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), WITH RESPECT TO THE BUILDINGREPORTS PROGRAM OR ANY SERVICES PROVIDED HEREUNDER. THE PROVISIONS OF THIS SECTION 12 SET FORTH MEMBER'S SOLE REMEDY FOR BREACH OF THE WARRANTIES PROVIDED IN THIS AGREEMENT.

13) **Indemnification.**

   a) Member hereby indemnifies BuildingReports and its Affiliates and their respective officers, directors, employees, agents and independent contractors (collectively, the "BuildingReports Indemnitees") and agrees to defend and hold the BuildingReports Indemnitees harmless from and against any and all losses, costs (including court costs and reasonable attorneys' fees), damages, settlements, suits, actions, expenses, taxes, fines, penalties, liabilities, and claims (collectively, "Losses") sustained by or involving the BuildingReports Indemnitees arising out of, resulting from or relating to
      i) any breach by Member of this Agreement,
      ii) use of the BuildingReports Program or Services by Member, any of Member's personnel, contractors or Authorized Users, or any other Persons who gain access to the BuildingReports Program or Services through Member, except to the extent such claims arise out of BuildingReports' negligence or willful misconduct, and
      iii) any claims made by third parties in connection herewith, except to the extent such claims arise out of BuildingReports' negligence or willful misconduct.
   b) IN NO EVENT SHALL BUILDINGREPORTS OR ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, SUPPLIERS, AGENTS, SUBCONTRACTORS OR REPRESENTATIVES BE LIABLE HEREUNDER FOR ANY LOSS OF DATA (EXCEPT TO THE EXTENT SUCH LOSS OF DATA OCCURS ON BUILDINGREPORT'S NETWORK AND IS CAUSED BY BUILDINGREPORTS) OR OTHER DAMAGES RESULTING FROM ANY DELAY OR DEFECT IN OR NON-DELIVERY OF ANY DATA TRANSMISSIONS. NEITHER PARTY SHALL BE LIABLE FOR ANY OTHER SPECIAL, CONSEQUENTIAL, PUNITIVE, OR INDIRECT DAMAGES, INCLUDING, WITHOUT LIMITATION, ANY OF THE FOREGOING ARISING OUT OF THE USE OF OR INABILITY TO USE THE SERVICES OR BUILDINGREPORTS PROGRAM OR ANY BREACH OF ANY REPRESENTATION OR WARRANTY, WHETHER OR NOT EITHER PARTY HAD NOTICE OF THE POSSIBILITY OF SUCH DAMAGES OCCURRING AND REGARDLESS OF THE NATURE OF THE CLAIM OR FORM OF ACTION (WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE).
   c) UNDER NO CIRCUMSTANCES SHALL BUILDINGREPORTS' TOTAL LIABILITY TO MEMBER OR ANY OTHER PERSON, REGARDLESS OF THE NATURE OF THE CLAIM OR FORM OF ACTION (WHETHER ARISING IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE), EXCEED THE TOTAL AMOUNT PAID TO BUILDINGREPORTS BY MEMBER HEREUNDER.

14) **Force Majeure.** BuildingReports shall not be liable to Member or any other Person for any delay or failure to perform the Services or any provision of this Agreement if such delay or failure is caused by an act of God or any factor beyond the reasonable control of BuildingReports, or the failure of Member to comply with its obligations and responsibilities under this Agreement.

15) **No Third Party Beneficiaries.** Nothing contained in this Agreement shall be deemed to create, or be construed as creating, any third party beneficiary right of action or other right of third parties.

16) **Assignment.** Member may not assign this Agreement (by operation of law or otherwise) without the express, prior written consent of BuildingReports in each instance.

17) **Waiver.** Neither party shall be deemed to have waived any provision hereof unless such waiver is in writing and executed by a duly authorized officer of the waiving party. No waiver by either party of any provision hereof on one occasion shall constitute a waiver of such provision on any other occasion.

18) **Severability.** The invalidity or unenforceability, in whole or in part, of any provision, term, or condition hereof shall not affect the validity or enforceability of the remainder of such provision, term or condition or of any other provision, term, or condition.

19) **Entire Agreement.** This Agreement, together with all Exhibits and Schedules hereto (all of which are incorporated herein by reference), constitutes the entire understanding and agreement of the parties, and supersedes all prior and contemporaneous understandings and agreements, written or oral, relating to the subject matter hereof.

20) **Governing Law.**  This Agreement will be governed by and construed in accordance with the laws of the State of Georgia without regard to its rules concerning conflicts of laws.

21) **Captions.**  Captions of the sections of this Agreement are for reference purposes only and do not constitute terms or conditions of this Agreement, nor shall they limit or affect the meaning of any term or condition hereof.

22) **Amendments.** This Agreement may not be amended unless such amendment is in writing and signed by both parties hereto.

23) **Notices.**  All notices and other communications in connection with this Agreement shall be in writing and (a) delivered personally, (b) sent by an express national courier service or, (c) sent by pre-paid, first class certified mail, return receipt requested.  All notices and other communications contemplated by this Agreement shall be addressed as follows:

    > BuildingReports
    > 1325 Satellite Boulevard, Suite 1607
    > Suwanee, GA  30024
    > Attention: Membership Services

    Member:
    The address specified on the signature page attached hereto or at such other address as Member may designate by written notice. Notice by courier or certified mail shall be effective on the date it is officially recorded as delivered to the intended recipient by return receipt or the date of attempted delivery where the intended recipient refuses delivery. Notice delivered personally shall be deemed to have been delivered to and received by the addressee, and shall be effective on the date of delivery.

24) **Counterparts.**  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

25) **Venue and Forum.**  THE PARTIES HERETO AGREE THAT VENUE IN ANY AND ALL ACTIONS AND PROCEEDINGS RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT SHALL BE IN THE STATE AND FEDERAL COURTS IN AND FOR FULTON COUNTY, GEORGIA, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION FOR SUCH PURPOSE, AND THE PARTIES HERETO IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND IRREVOCABLY WAIVE THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING. SERVICE OF PROCESS MAY BE MADE IN ANY MANNER RECOGNIZED BY SUCH COURTS.  EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

26) **Attorney's Fees.**  Should either party employ an attorney or attorneys to enforce any of the provisions hereof, or to protect its interest in any matter arising under this Agreement, or to recover damages for the breach hereof, the non-prevailing party in any final judgment arising there from agrees to pay to the other party all reasonable costs, charges and expenses, including attorneys' fees, expended or incurred in connection therewith.

27) **Inspection Rights.**  During the term of this Agreement and for ninety (90) days thereafter, either party may, at its sole cost and after reasonable prior notice to the other party, reasonably inspect such information and systems of the other party as are necessary to verify the other party's compliance with the terms of this Agreement and the Acceptable Use and Privacy Policy; provided that such inspection does not unreasonably interfere with the day to day operations of the other party and any information obtained during such inspection is subject to the rights, restrictions and obligations in Sections 5 and 10.  A party may conduct such an inspection no more often than once per year during the term of this Agreement and no more often than once following the termination of this Agreement.  Notwithstanding anything to the contrary in this Section 27, neither party shall be entitled to inspect any information relating to any third party.